**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **REENA LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 11-0627-WS-C** |
| | ) | |
| **THE KRYSTAL COMPANY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Award of Attorney's Fees (doc. 34) and Plaintiff's Supplementary Fee Petition (doc. 40). The attorney's fee issue has been extensively briefed and is now ripe for disposition.

**I.     Relevant Background.**

Plaintiff, Reena Lee, brought this action against The Krystal Company ("Krystal") alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). The gravamen of Lee's claims was that Krystal had failed to pay her straight-time wages that were due and owing, and that it had also failed to comply with FLSA record-keeping requirements.[1]

On August 23, 2012, Krystal extended an Offer of Judgment to Lee in the amount of $1,218.00, exclusive of costs and attorney's fees, pursuant to Rule 68(a), Fed.R.Civ.P.  Lee

---

[1]     Lee initially named two additional defendants, Brian Broome and Vernon McLemore, both individually and doing business as Elite Security.  Lee nominally worked for Elite, which provided security services at a Krystal location; however, she sued both Elite's principals and Krystal under the FLSA on the theory that they jointly employed her, such that each of them was responsible for paying her wages.  On January 16, 2012, the undersigned entered an Order (doc. 11) granting Lee's request to dismiss her claims against Broome and McLemore without prejudice.  The apparent basis for that request was Lee's assessment that Broome and McLemore are "judgment-proof."  Nonetheless, Krystal has pursued cross-claims against Brown and McLemore, and ultimately obtained a Clerk's Entry of Default (doc. 27) against both of them on May 15, 2012 when they failed to appear or defend after service of process.

timely accepted the Offer as representing "the full amount of the wages in controversy." (Doc. 32.) By Order (doc. 33) dated August 28, 2012, the undersigned approved that settlement.

Left undecided by the Offer of Judgment and the August 28 Order were the issues of fees and costs, both of which Lee claims. In subsequent filings, Lee has requested an award of attorney's fees and costs in the total amount of $30,105.87.[2] For its part, Krystal opposes numerous aspects of Lee's fee petition, urging the Court to trim her initial fee request by a robust 65% and to deny her supplemental petition altogether.[3]

## II.    Analysis.

### A.    *Governing Legal Standard.*

The text of the FLSA leaves no doubt that reasonable attorney's fees and costs are to be awarded as a matter of course to prevailing plaintiffs. *See* 29 U.S.C. § 216(b) (when employer violates FLSA's overtime or minimum-wage provisions, the court "shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) ("Section 216(b) of the [FLSA] makes fee awards mandatory for prevailing plaintiffs."). Here, Krystal correctly concedes that Lee is a prevailing plaintiff who is therefore entitled to recover a reasonable fee under § 216(b). *See* doc. 36, at 18 ("Krystal does not dispute that Plaintiff may be awarded a reasonable attorneys fee."). What Krystal stridently opposes, however, is the reasonableness of the sums claimed by Lee in her fee petition. As such, this analysis will focus squarely on the "reasonableness" requirement for FLSA fee recovery.

It is well established that "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate …. The product of these two figures is the lodestar and there is a strong presumption

---

[2]    This amount consists of an initial petition totaling $27,103.37, and a supplemental petition (relating to the preparation of plaintiff's reply brief on fees and attendant failed settlement discussions) in the amount of $3,002.50.

[3]    Judging by the zeal with which the parties have pressed their respective positions on fees, neither side has been mindful of the well-worn admonition that "[a] request for attorney's fees should not result in a second major litigation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted).[4]  Of course, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1492 (11th Cir. 1994) (citation omitted); *see also Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) ("In calculating a reasonable attorney's fee award, the court must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the 'lodestar.' ... The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."); *Reynolds v. Alabama Dep't of Transp.*, 926 F. Supp. 1448, 1453 (M.D. Ala. 1995) ("After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upward or downward.").

In fixing a reasonable fee, courts in this Circuit consider the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which are as follows: "1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the 'undesirability' of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 n.7 (11th Cir. 1999); *see also Bivins*, 548 F.3d at 1350 ("In determining what is a reasonable hourly rate and what number of compensable hours is reasonable, the court is to consider the 12 factors enumerated in *Johnson*.").

---

[4]     *See also Norman*, 836 F.2d at 1299 (to fashion a fee award, the court "is to multiply hours reasonably expended by a reasonable hourly rate"); *Mayson v. Pierce*, 806 F.2d 1556, 1557 (11th Cir. 1987) ("The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

The Court's examination of plaintiff's fee petition and supporting exhibits proceeds in recognition of these principles. The Court has weighed all of the *Johnson* factors in evaluating the reasonableness of the claimed hourly rates and compensable hours, and in determining whether upward or downward adjustment from the lodestar is appropriate.

### B.    *Reasonable Hourly Rate.*

Plaintiff requests a fee award calculated pursuant to the following hourly rates: Banks C. Ladd, Esq., $250.00; Mary Carol Ladd, Esq., $225.00; Stacie Vitello, Esq., $150.00; and Stephanie Booth, Esq., $150.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (citation and internal quotation marks omitted). An exception is that a party may recover "the non-local rates of an attorney who is not from the place in which the case was filed" upon a showing of "a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* At all times, "[t]he party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citation and internal quotation marks omitted).

In its lengthy Response to the fee petition, Krystal does not challenge the billing rates of Banks Ladd, Vitello or Booth. Moreover, these requested rates have evidentiary support in the form of affidavits documenting each timekeeper's qualifications and applicable market rates. The Court also observes that other judges in this District Court have recently approved a $250 hourly rate for Mr. Ladd in FLSA fee disputes. *See Norman v. Alorica, Inc.*, 2012 WL 5452196, *4 (S.D. Ala. Nov. 7, 2012); *Wolff v. Royal American Management, Inc.*, 2012 WL 5303665, *4 (S.D. Ala. Oct. 25, 2012). Given defendant's acquiescence to these claimed rates, and inclusion in the record of facts lending facial support to them, the Court accepts plaintiff's request for

reimbursement at hourly rates of $250 for Mr. Ladd and $150 for each of Stacie Vitello and Stephanie Booth.[5]

However, Krystal does attack the $225.00 hourly rate claimed by attorney Mary Carol Ladd, reasoning that the evidentiary showing is deficient on that point and that her lack of experience in wage-hour litigation warrants a rate of just $150 per hour.  (Hetrick Decl. (doc. 36, Exh. 2), ¶ 5.)  Again, it is plaintiff's burden to establish the reasonableness of the requested rates. *See, e.g., Norman*, 836 F.2d at 1299 ("The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates.").  Yet plaintiff's initial showing was largely silent as to Mary Carol Ladd's qualifications, skills, experience, reputation and so on.  In response to this objection, plaintiff supplied the Affidavit of Mary Carol Ladd (doc. 38-1), documenting her 14 years of legal experience in the federal and state courts of Alabama.  Although Ms. Ladd does have substantial experience in the general commercial litigation realm, she acknowledges having been engaged in the FLSA field for little more than one year.  This lack of specialization in an area of law that demands it weighs strongly against the well above-average hourly rate plaintiff claims for Ms. Ladd's time.[6]  In light of this concern, and with due consideration of this Court's own "knowledge and expertise," the Court finds that an appropriate, reasonable rate for Ms. Ladd in this litigation is **$175 per hour**.

---

[5]       In so doing, the Court cautions that it is not making a definitive pronouncement that these rates are reasonable for the Mobile market; rather, the Court is relying on defendant's non-opposition to the requested rates, as well as the existence of record evidence and legal authority lending facial credence to plaintiff's request.

[6]       This Court found in recent years that an attorney with 25 years of practice and lauded as having "superior experience, reputation, and skill" (but limited civil rights expertise) was entitled to a reasonable hourly rate of $250.  *See Trotter v. Columbia Sussex Corp.*, 2010 WL 383622, *5 (S.D. Ala. Jan. 29, 2010).  A few months ago, the Court fixed an hourly rate for plaintiff's counsel in a Title VII lawsuit at $280, which was "near the upper end of the range of fees attainable in the Mobile market for contingent-fee plaintiff's civil rights work."  *Johnson v. TMI Management Systems, Inc.*, 2012 WL 4435304, *4 & n.7 (S.D. Ala. Sept. 26, 2012).  Ms. Ladd's hourly rate in this case must be set at a substantial discount to those in *Trotter* and *Johnson*.

### C.      Reasonable Hours.

#### 1.      Legal Standard and Defendant's Objections.

Of course, reasonable hourly rates are only one parameter in the lodestar calculation.  The other is reasonable hours.  In this regard, "[f]ee applicants must exercise what the Supreme Court has termed billing judgment. … That means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours."  *ACLU of Georgia*, 168 F.3d at 428 (citations and internal marks omitted).  Thus, the district court "must be reasonably precise in excluding hours thought to be unreasonable or unnecessary," and "is charged with deducting for redundant hours."  *Norman*, 836 F.2d at 1301.  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary.  Courts are not authorized to be generous with the money of others."  *ACLU of Georgia*, 168 F.3d at 428 (internal quotation marks omitted).  As the fee applicant, Lee "bears the burden of establishing entitlement and documenting the appropriate hours."  *Id.* at 427 (citation omitted).

Krystal's position is that the hours submitted in Lee's fee petition are unreasonable in the following respects: (i) excessive use of 0.1-hour incremental billing entries for tasks requiring much less than 6 minutes (such as sending or receiving e-mails, receiving documents, and the like); (ii) excessive billings ($2,240) for intraoffice communications among plaintiff's counsel; (iii) billings in the amount of $3,708.25 for claims against Broome and McLemore, as to whom Lee dismissed her claims; (iv) billings in the amount of $2,047.50 for a summary judgment motion that was never filed; (v) excessive billings ($2,347.50) for legal research on the "joint employer" question; (vi) billings ($375) for clerical or paralegal work billed out at attorney rates; (vii) excessive billings ($3,462.50 + $2,972.50) for litigating the attorney's fee issue; and (viii) inappropriate use of multiple attorneys at high billing rates for straightforward litigation.

#### 2.      Krystal's Meritless Objections to Hours Expended.

Certain of Krystal's stated concerns miss the mark.  For example, the Court does not credit defendant's contention that Lee cannot recover fees related to her unsuccessful pursuit of claims against Broome and McLemore.  On that score, defendant relies on the proposition that "[a] court should not award fees for time spent on ***unrelated, unsuccessful*** claims."  *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 717 (11th Cir. 2002) (emphasis added).  But defendant overlooks the "unrelated" qualifier.  In fact, Lee's FLSA claims against Broome and

McLemore were intertwined with her FLSA claims against Krystal. She was nominally employed by Broome and McLemore's company, Elite Security; however, Lee contended that she was jointly employed by both Elite and Krystal. It was hardly unreasonable for her to pursue claims against both potential employers simultaneously, especially given the uncertainty as to whether one or both entities would ultimately be classified as her employing entity.[7] Besides, Lee achieved complete success on her FLSA claims, considered as a whole, in that she recovered all back wages that she was owed; therefore, it is inaccurate to label any portion of her claims "unsuccessful" for fee purposes.[8] For these reasons, the Court does not deem "unreasonable" the hours that Lee's counsel spent pursuing identical FLSA claims against Broome and McLemore on a "joint employer" theory.[9]

Similarly, the Court will not reduce Lee's fee award for the time her counsel spent researching the "joint employer" legal issue that lay at the center of the case. Krystal frames the law of joint employers as "clear-cut" and insists that it "did not require difficult concepts to grasp." (Doc. 36, at 10.) Nonetheless, the fact remains that Krystal injected the issue into the

---

[7]    The fact that Lee ultimately took a voluntary dismissal of her claims against Broome and McLemore does not alter this calculus. According to plaintiff, she abandoned her claims against those individuals after determining that they were judgment-proof. (Doc. 39, at 3.) Far from being irresponsible or wasteful, plaintiff's decision to jettison those claims under those circumstances was prudent and eminently reasonable, as a means of containing fees and controlling expenditures on claims that were unlikely to blossom into a collectible judgment.

[8]    *See, e.g., Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987) (if successful and unsuccessful claims involve common core of facts or related legal theories, and if plaintiff's overall relief was "excellent," "his attorney should be fully compensated for all time reasonably expended on the litigation"); *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998) (where claims are interrelated, for fee purposes "we focus on the overall success of the plaintiff rather than the success or failure of each of the plaintiff's causes of action," such that plaintiff is not penalized if his successful claims "give him all that he reasonably could have asked for").

[9]    As an aside, the Court notes errors in Krystal's classification of most of the hours it attributes to the Broome/McLemore claims. (*See* Hetrick Decl., ¶ 7, and Exh. 1 at 2-4.) More than three-quarters of those time entries were dated <u>after</u> Lee's dismissal of her claims against Broome and McLemore on January 13, 2012 (*see* doc. 10). Thus, those entries relate to Lee's remaining claims against Krystal, and her intended use of evidence regarding Elite Security to prove up a joint employer theory against Krystal. Defendant's failure to appreciate this nuance merely reinforces the intertwined, closely related nature of Lee's claims against Krystal and those against the Elite principals.

case in its Answer by asserting that "Krystal did not employ the plaintiff," and that Broome/
McLemore were "exclusively responsible for any failure on their part to pay her wages." (Doc.
8, at 5.) Under the circumstances, Lee's attorneys were justified in devoting time and attention
to researching the "joint employer" issue on which the litigation would likely turn had it
proceeded on the merits. Nor does the expenditure of 10.4 hours by plaintiff's counsel to
research that issue in fits and starts over a 14-month period appear unreasonable or unwarranted,
given the centrality of this issue to Lee's claims, the strictures of Rule 11, and Krystal's
sustained pushback on the joint employer issue.

The Court also rejects Krystal's arguments that plaintiff's billings on the fee issue itself
are unreasonable. Without question, time expended on litigating a statutory attorney's fee
petition is recoverable. *See, e.g., Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th
Cir. 1990) ("It is well settled that time expended litigating attorney fees is fully compensable.");
*Raetano v. M. Russell, LLC*, 2010 WL 3259434, *2 n.3 (M.D. Fla. July 29, 2010) ("Time
expended litigating attorney's fees is compensable."). While the Court agrees that the amount of
ink the parties have spilled concerning Lee's fee petition is both regrettable and disproportionate
to the value of the underlying dispute, Krystal bears considerable responsibility for this state of
affairs. Given Krystal's "contest-everything" approach to the fee petition, plaintiff cannot be
faulted for incurring substantial fees to develop, flesh out, and bolster her fee petition against
defendant's withering attacks. Another way to put it is this: If a defendant chooses to argue
tooth and nail about numerous facets of an attorney fee petition, then it is reasonable for the
plaintiff to expend the necessary time to defend its petition. Here, the magnitude of Lee's
billings for the fee issue is directly proportional to the level of resistance that defendant chose to
apply. While the Court agrees with Krystal that $6,000 is a non-trivial sum for a plaintiff to
spend litigating a fee issue (particularly where the underlying claim was worth just $1,218), it
would be surprising if Krystal's own fees incurred on this issue were substantially lower,
particularly given Krystal's decision to file an 18-page opposition brief and to retain a local
lawyer to review plaintiff's billings on a line-by-line basis, spanning an additional 18 single-
spaced pages of exhibits. It takes two to tango, and tango Krystal did. Under all the relevant

facts and circumstances, the Court will not disallow plaintiff's time spent of necessity fending off Krystal's attacks to her fee petition.[10]

### 3.    Krystal's Meritorious Objections to Hours Expended.

Although not all of its arguments against Lee's fee petition are persuasive, Krystal does advance several points demonstrating unreasonable aspects of the hours claimed by plaintiff. First, defendant accurately observes that plaintiff's counsel demonstrate a propensity to bill time in tenth-hour fractional increments for events that reasonably required much less, such as "Call to Elite Security and leave voice mail message for same," "Receipt of returned letter sent to Defendant Vernan [sic] McLemore," "Receipt and review of alias summons filed by Krystal," "Receipt of executed summons," "Receipt and review of amended service list," "Email initial disclosures to opposing counsel," and so on.  A modest reduction in claimed hours is appropriate to correct for this billing methodology.

Second, defendant shows that Lee's fee petition includes more than 10 hours for intraoffice communication between plaintiff's multiple lawyers.  (Hetrick Decl., ¶ 10 & Exh. 1, at 9-11.)  These types of billings are disfavored, and are subjected to close scrutiny to prevent abuse.  *See, e.g., Mogck v. Unum Life Ins. Co. of America*, 289 F. Supp.2d 1181, 1194 (S.D. Cal. 2003) ("the Court believes that Monson and Horner inappropriately billed for communicating with one another"); *In re Latshaw Drilling, LLC*, 481 B.R. 765, 799 (Bankr. N.D. Okla. 2012) (reducing hours from fee petition where "time records reflect that interoffice conferences (in person, or by phone or email) between and among the professionals billing in this case represent a sizable portion of the total hours billed"); *In re Skyport Global Communications, Inc.*, 450 B.R. 637, 649 (Bankr. S.D. Tex. 2011) (excluding from reasonable hours duplicative and/or redundant time entries for intraoffice communications involving multiple attorneys on the same side); *In re*

---

[10]    In this same vein, the Court overrules Krystal's objection that Lee's reply brief amounts to a "cathartic exercise" for which defendant should not have to pay.  (Doc. 44, at 2.) While the "description" field of a couple of plaintiff's time entries related to the reply brief betrays an emotional edge, the actual time expended on the reply appears reasonable, given the plethora of fee petition criticisms invoked by Krystal.  And the Court does not credit defendant's contention that it is all plaintiff's fault the fee issue was not settled out of court, inasmuch as the record does not support such a characterization.  If anything, both sides appear culpable in their decision to litigate fees to the hilt, rather than working together to achieve a readily attainable compromise without the burden, expense and drag on judicial resources attendant to their election to escalate their fee dispute into a pitched battle.

*Wildman*, 72 B.R. 700, 710 (Bankr. N.D. Ill. 1987) ("Generally, attorneys should work independently, without the incessant 'conferring' that so often forms a major part of many fee petitions.").[11]

The deeper issue, of course, lies in plaintiff's counsel's decision to staff this narrowly-circumscribed, straightforward case with four timekeepers, three of whom billed 20+ hours on the file. *See generally In re Schneider*, 2007 WL 3095464, *5 (Bankr. N.D. Cal. Oct. 22, 2007) ("This inappropriate level of staffing is reflected in the numerous intraoffice conferences in this application."). With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings. A question that Lee does not satisfactorily answer in her briefs is why the case was staffed in that manner in the first place. Given Mr. Ladd's expertise (as documented by his many years of FLSA experience, his professed dedication of the vast majority of his professional time to FLSA litigation, and the top-shelf $250 hourly rate he commands), the need for him to engage in extensive consultation with more junior lawyers about how to manage this case is dubious.[12]

---

[11]    That said, intraoffice communications are not *per se* unreasonable or unbillable. Under proper circumstances, they may be quite helpful in ensuring efficient staffing, coordination of attorney effort, and the like. *See, e.g., Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F. Supp.2d 1246, 1262-63 (N.D. Okla. 2004) ("Obviously, lawyers working together on a case must communicate with each other and that communication may *spare* the client duplication of effort"); *In re Frontier Airlines*, 74 B.R. 973, 977-78 (Bankr. D. Colo. 1987) (where multiple attorneys perform interrelated functions that require "some degree of coordination and communication among them, … intraoffice conferences among counsel are not only expected but are necessary, and there is no reason why compensation should not be provided for such services").

[12]    To be sure, plaintiff explains that senior counsel was simply fulfilling his obligation "to shift work to junior attorney's [*sic*] who bill at lower rates in order to keep fees in check" and took advantage of the "different skill sets" that different attorneys brought to the table, such as Ms. Ladd's brief-writing acumen. (Doc. 39, at 2.) The law supports this general proposition. After all, Eleventh Circuit precedent is clear that "a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *ACLU of Georgia*, 168 F.3d at 432. If Lee's arguments were correct, however, the time sheets submitted with her fee petition would look quite different, and the final amount claimed would be smaller. For starters, many of the routine, relatively low-skill tasks for which Mr. Ladd recorded billable time could and should have been downstreamed to a junior timekeeper. They were not. Likewise, Ms. Ladd's brief-writing expertise would largely have been a non-factor in this case (at least until the fee petition, as to (Continued)

Accordingly, the Court agrees with Krystal that some reduction in hours billed is appropriate to account for duplicative, redundant, or otherwise unreasonable attorney conferences.

Third, defendant takes aim at the reasonableness of plaintiff's 8.9 hours expended on an unfiled summary judgment motion. The Court agrees with Lee that it is not *per se* unreasonable to bill a client for (or to include in a fee petition) time expended on a motion that never was actually filed. What is objectionable, however, is the timing of counsel's work on Lee's summary judgment motion. According to the fee petition, Lee's counsel commenced billing for summary judgment issues in December 2011, before Krystal had even filed an answer. There was also a spate of billings for summary judgment in April 2012, some five months before the dispositive motions deadline fixed by the Rule 16(b) Scheduling Order. Plaintiff has not explained (and the Court cannot perceive) why it was reasonable to commence work and billings on a Rule 56 motion five months before the governing deadline. Plaintiff's time entries for summary judgment in early August 2012 are only slightly more defensible, given that (i) the dispositive motions deadline remained more than a month away, and (ii) settlement discussions had picked up steam in the preceding weeks, such that a negotiated resolution prior to the Rule 56 deadline appeared likely. Under these circumstances, the bulk of plaintiff's time entries for summary judgment is unreasonable and will be discounted.

Fourth, defendant correctly points out multiple places in the billing records in which plaintiff's counsel seek to bill for paralegal or clerical tasks at a lawyer rate. This practice is improper.[13] However, by defendant's own estimation, these sorts of billing errors are infrequent

---

which only 6 of her 21.9 billed hours related) given the dearth of briefing antecedent to the fee dispute. The point is simple: for all her rationalizations about efficiency, plaintiff has not shown why the differential skills and billing rates of the various attorneys necessitated bringing so many of them onboard, with the side effect of frequent internal conferences, for which plaintiff unreasonably seeks to bill Krystal.

[13]        The law is clear that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *see also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (applying *Jenkins* rule and indicating that "[w]e do not understand why attorney or even legal assistant skills were required" for tasks such as filing briefs, delivering documents, and so on); *Coleman v. Houston Independent School Dist.*, 1999 WL 1131554, *9 (5th Cir. Nov. 8, 1999) ("Paralegal expense is recoverable only to the extent that the work performed is similar to that typically performed by lawyers. … Otherwise, (Continued)

in plaintiff's fee petition; indeed, defendant contends that these discrepancies inflated plaintiff's petition by just $367.50.  (*See* doc. 36, at 12.)  This kind of trifling correction does not merit further judicial scrutiny, although it will be reflected in the final reduction of hours billed for reasonableness purposes.

Fifth, defendant asserts that the hours included in plaintiff's fee petition are not reasonable because plaintiff staffed the matter inappropriately with four timekeepers, including two of them at a high level of experience and elevated rates.  This Order has already alluded to this "too-many-cooks" problem and the concomitant billing inefficiencies, for which some deduction is appropriate under applicable law.  *See generally ACLU of Georgia*, 168 F.3d at 433 ("The time billed for excessive lawyers in a courtroom or conference when fewer would do may obviously be discounted.") (internal quotes omitted).  The Court therefore credits this objection.

In summary, then, the Court concludes that plaintiff's requested total of 133.6 attorney hours spread across four timekeepers is unreasonable because it includes excessive incremental billing for ephemeral activities, unnecessary billings for intraoffice communications, billings for a prematurely prepared summary judgment brief, billings for tasks that are properly deemed clerical or paralegal work, and unnecessary billings for multiple-attorney redundancies.  Faced with these circumstances, a court "has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."  *Bivins*, 548 F.3d at 1350; *see also Loranger*, 10 F.3d at 783 ("where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required").  The Court selects the latter approach, in lieu of parsing voluminous time entries on a line-by-line basis.  Upon careful examination of plaintiff's fee records, and with due regard for (albeit not unqualified acceptance of) defendant's estimates of the number of hours falling within each of these categories of unreasonable billings, the Court imposes a 20% across-the-board cut of each timekeeper's billable hours claimed in the fee petition.

For purposes of the lodestar calculation, then, the "reasonable hours" for each of plaintiff's timekeepers are as follows:  Banks Ladd, Esq., 61.2 hours; Mary Carol Ladd, Esq.,

---

paralegal expense is an unrecoverable overhead expense."); *Branch Banking and Trust Co. v. Imagine CBQ, LLC*, 2012 WL 1987830, *3 (S.D. Ala. June 4, 2012) ("As to reasonable paralegal fees, only time spent performing work traditionally performed by attorneys will be compensated.").

17.5 hours; Stacie Vitello, Esq., 3.1 hours; and Stephanie Booth, Esq., 25.0 hours.  Computing the arithmetic of multiplying reasonable hours by reasonable rates, the Court finds that the lodestar amounts are as follows: (i) for Mr. Ladd, 61.2 hours at $250/hour, or $15,300.00; (ii) for Ms. Ladd, 17.5 hours at $175/hour, or $3,062.50; (iii) for Ms. Vitello, 3.1 hours at $150/hour, or $465.00; and (iv) for Ms. Booth, 25.0 hours at $150/hour, or $3,750.00.  This yields a total lodestar figure of $22,577.50.

>           **D.       *Adjustments to the Lodestar Amount.***

Of course, computation of the lodestar does not necessarily conclude the fee analysis. "[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Bivins*, 548 F.3d at 1350.  "After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained.  If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302 (explaining that the lodestar may be reduced for partial or limited success, or may be enhanced for "exceptional" results "that are out of the ordinary, unusual or rare").  More generally, the lodestar may be adjusted for reasonableness utilizing the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *See Neptune Designs*, 469 F.3d at 1359.  For her part, plaintiff professes to seek no enhancement to the lodestar.[14]  By contrast, defendant urges the Court to find that several *Johnson* considerations warrant a downward adjustment.

Krystal's two most prominent criticisms of the lodestar amount warrant further examination.  First, a recurring theme in Krystal's filings is that Lee's counsel improperly and recklessly ran up fees even though the case could have been settled in its infancy.[15]  There is

---

[14]         Such restraint is prudent, given the high bar a plaintiff must satisfy to obtain enhancement of the lodestar amount. *See, e.g., Lane v. Capital Acquisitions and Management Co.*, 554 F. Supp.2d 1345, 1350 (S.D. Fla. 2008) ("Enhancement of the lodestar should be made only in exceptional cases where need and justification for such enhancement are readily apparent and supported by clear evidence of record.").

[15]         *See, e.g.,* doc. 36, at 2 ("Plaintiff and Krystal engaged in settlement discussions during the early stages of this litigation," but those efforts failed because "[e]ach time settlement was discussed … Plaintiff's attorney's fees increased dramatically"); doc. 36, at 7 ("attempts to settle plaintiff's case were hampered by ever-rising attorney's fees of plaintiff's counsel"); doc. 36, at 9 (fees incurred in April 2012 were unreasonable "especially given the fact that settlement discussions were ongoing"); doc. 36, at 10 ("Settlement discussions took place early on in the (Continued)

ample persuasive authority deeming it improper, unreasonable and non-compensable for a plaintiff's attorney to delay or sabotage an achievable settlement for the purpose of ratcheting up attorney's fees. *See, e.g., Johnson v. GDF, Inc.*, 668 F.3d 927, 932 (7th Cir. 2012) ("substantial settlement offers should be considered in determining reasonable attorney's fees"); *Goss v. Killian Oaks House of Learning*, 248 F. Supp.2d 1162, 1168-69 (S.D. Fla. 2003) (opining that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees" and criticizing plaintiff's counsel for "continuously employ[ing] a strategy of delay and obfuscation in his attempt to ward off the inevitable resolution of the case"); *Wolff v. Royal American Management, Inc.*, 2012 WL 5303665, *5 (S.D. Ala. Oct. 25, 2012) ("FLSA suits are not meant to become a cottage industry divorced from the benefits they provide, and the fees should not shade over from fair play into a punitive measure against defendants who challenge a plaintiff's overtime claim in good faith.").

However, that is not what happened here. All record evidence shows that plaintiff's counsel repeatedly initiated and pursued settlement discussions with defendant, making reasonable demands in good faith as far back as June 2011.[16] For aught the record shows, defendant failed to engage in any serious attempt to settle the dispute until July 2012, and never made a settlement offer allowing for reasonable compensation of plaintiff's attorney's fees (to

litigation."); doc. 36, at 11 ("It is without question that this case could have been resolved much earlier than it did, thus freeing Plaintiff's counsel to engage in other pursuits."); doc. 44, at 2 ("In sum, the present case could have been settled on a reasonable basis well before any need to prepare a supplemental fee petition arose.").

[16]    Indeed, plaintiff's counsel's initial letter dated June 30, 2011 demanded that Krystal pay $1,217.08 in straight-time wages, $767.29 as a penalty under 29 U.S.C. § 216(b), and $2,500 in attorney's fees. (Doc. 35, Exh. 1.) To be sure, plaintiff's counsel did not have $2,500 in time (or 10 hours, at $250/hour) invested in the case to that point, but as an initial demand the figure was not so outlandish or unreasonable as to raise an inference of bad faith, nor would it have precluded Krystal from making a reasonable offer to settle the matter at that time. Indeed, there is no indication that Lee would not have discounted that figure to reach an amicable resolution upon appropriate counteroffer from Krystal, which evidently never materialized. Also, the June 30 letter cautioned Krystal of Lee's right to fees under 29 U.S.C. § 216(b) and of the certainty that the meter would continue running and that "[a]dditional fees will accrue as this matter progresses." (*Id.*) Having apparently chosen not to get serious about settling the case for another year, Krystal cannot reasonably complain now that those additional fees did, in fact, accrue, just as Lee's attorney had warned.

which plaintiff was entitled under the plain language of the FLSA) until the August 2012 Offer of Judgment, which plaintiff accepted.  Under the circumstances, there is no factual basis for reducing the lodestar amount on grounds that Lee's attorneys delayed, blocked or impeded settlement so as to maximize their billings.[17]  If Krystal seeks to point a finger at someone for not settling this case early (and thereby minimizing plaintiff's fees for which it is liable under the FLSA), it need look no further than the mirror.  Having forced Lee's attorneys to dig an attorney's fee hole rather than making a serious run at settlement in the early going, Krystal cannot now be heard to balk that the hole is too deep or too wide because the case should have settled earlier than it did.

Second, Krystal urges erasure of large swaths of the requested fees because they eclipse Lee's actual damages by a considerable margin.  This disparity between Lee's lodestar fee amount ($22,577.50) and her recovered wages ($1,218.00) is substantial and undeniable, and may properly be considered in evaluating the reasonableness of the fee request.  Nonetheless, there is no strict rule of proportionality between fees and damages.  As the Eleventh Circuit opined in an analogous setting, "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases … to depend on obtaining substantial monetary relief. … A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."  *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1493 (11th Cir. 1994) (citations omitted).[18]  Here, the record reflects that Krystal

---

[17]    *See, e.g., Azam-Qureshi v. The Colony Hotel, Inc.*, 540 F. Supp.2d 1293, 1298 (S.D. Fla. 2008) (plaintiff's counsel's behavior did not amount to nuisance suit where "Plaintiff's counsel initiated settlement of the suit and was forthcoming about the amount that its client was seeking"); *Rodriguez v. Super Shine and Detailing, Inc.*, 2012 WL 2119865, *6 (S.D. Fla. June 11, 2012) (finding no evidence "that Plaintiff's counsel engaged in a pattern of behavior designed to increase attorney's fees," and discounting "suggestion that the Plaintiff refused a reasonable settlement offer made by the Defendants, as there is no evidence of any prior settlement offers in the record").

[18]    *See also Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (for purposes of FLSA fee petition, "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights.") (citation and internal marks omitted); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp.2d 611, 622 (S.D.N.Y. 2012) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims (Continued)

engaged Lee in a war of attrition spanning more than a year from plaintiff's counsel's initial contact in June 2011 until Krystal's tender of a suitable offer of judgment in August 2012. Thus, to the extent that disproportionality exists, it is largely a function of defendant's own litigation practices. *See generally Heder v. City of Two Rivers*, 255 F. Supp.2d 947, 956 (E.D. Wis. 2003) (declining to adjust lodestar amount downward where fees substantially exceeded claim amount, reasoning that defendant "has only itself to blame for the disproportionality," in that plaintiff offered reasonable settlement at outset of case but defendant refused, chose to litigate everything, and forced plaintiff's fees to climb, such that plaintiff should not "be forced to swallow expenses incurred largely as [a] result of the [defendant]'s approach to this litigation"). Plaintiff's accrued fees are not out of line for a 14-month representation involving multiple defendants, recalcitrant parties, a potentially tricky "joint employer" defense, and an employer that displayed negligible interest in forging a reasonable compromise until the eve of settlement. Given the circumstances, plaintiff did what she had to do to vindicate her rights under the FLSA, and to promote the policies championed by Congress in that statute. The undersigned will not penalize her for having done so.

In short, the Court finds that no enhancement or reduction is warranted for results obtained or plaintiff's counsel's role in the settlement process. More generally, and after consideration of the parties' remaining debates concerning application of various *Johnson* factors here, the Court concludes that the lodestar fee adequately reflects the skill and experience of the

---

might otherwise be too small to justify the retention of able, legal counsel.") (citation and internal quotation marks omitted); *Garcia v. R.J.B. Properties, Inc.*, 756 F. Supp.2d 911, 917 (N.D. Ill. 2010) ("in assessing 'reasonableness,' the court is not free to second-guess Congress's determination that the Fair Labor Standards Act is worthy of enforcement and that plaintiffs who prove a violation of that Act are entitled to recovery of the fees that such litigation reasonably costs"); *Rodriguez*, 2012 WL 2119865, at *7 ("[F]ee awards should not simply be proportionate to the results obtained, especially in FLSA cases, as fee awards in FLSA cases are often greater than the amount recovered by the plaintiff. … This is to ensure that individuals with small claims can obtain representation necessary to enforce their rights.") (citations and internal quotation marks omitted); *Wolff*, 2012 WL 5303665, at *4 ("there is no *per se* rule of proportionality" in calculating attorney's fees in FLSA cases); *Alford v. Martin & Gass, Inc.*, 2009 WL 2447936, *5 (E.D. Va. Aug. 3, 2009) ("in a FLSA case, 'undue emphasis' should not be placed on the amount of the plaintiff's recovery").

attorneys, and the complexity and difficulty of the litigation, such that no modification or adjustment of that figure is appropriate.

       ***E.***     ***Costs.***

       Aside from attorney's fees, Lee seeks an award of costs and expenses in the total amount of $805.87, which may be disaggregated into the following constituent parts: (i) civil filing fee, $350.00; (ii) service of process fee to Keith Investigations, $130.00; (iii) PACER charge, $10.00; (iv) postage, copies and certified mail, $135.37; and (v) WESTLAW charges, $180.00. Defendant contests several of these categories of expenses.

       The law is clear that a prevailing plaintiff in an FLSA case is entitled to "costs of the action." 29 U.S.C. § 216(b); *see also Santillan v. Henao*, 822 F. Supp.2d 284, 301 (E.D.N.Y. 2011) ("As a general matter, a prevailing plaintiff in an action under the FLSA … is entitled to recover costs from the defendant."). "Under the FLSA, costs include reasonable out-of-pocket expenses." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *see also Shorter v. Valley Bank & Trust Co.*, 678 F. Supp. 714, 726 (N.D. Ill. 1988) (similar).

       Defendant's position is that the service of process fee, PACER charge and WESTLAW charges are not compensable. With regard to the service of process fee, the Court finds that the $130 charge was reasonably incurred by Lee in attempting to perfect service on Broome and/or McLemore, and may be properly shifted to Krystal pursuant to § 216(b). However, the PACER charge is not documented or explained in any meaningful way, and appears invalid given that litigants in this District Court get a "free look" at all filings in their case, with no PACER charges. "Fee applicants bear the burden of providing sufficient detail in their records to explain and support their requests for fees and costs." *Andrade v. Aerotek, Inc.*, 852 F. Supp.2d 637, 645 (D. Md. 2012). Lee has not met that burden as to the PACER charge. Moreover, as to the WESTLAW charge, the Court agrees with Magistrate Judge Nelson that plaintiff's counsel's practice of billing a $10 monthly fee for WESTLAW use on each of its files is "a thinly-veiled attempt to make an expense of an item of law firm overhead," and that such a charge is unreasonable and should be disallowed. *See Wolff*, 2012 WL 5303665, at *9.

       After subtracting the $10 PACER fee and $180 WESTLAW charge, plaintiff will be awarded reasonable costs of $615.87.

**III.    Conclusion.**

For all of the foregoing reasons, plaintiff's Motion for Award of Attorney's Fees (doc. 34) is **granted in part**, and **denied in part**.  Plaintiff is **awarded** reasonable attorney's fees in the total amount of **$22,577.50**, and costs in the amount of **$615.87**.

DONE and ORDERED this 15th day of January, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE